**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MELISSA CONCEPCION,<br><br>Plaintiff,<br><br>-*against*-<br><br>UNITED STATES OF AMERICA and FEDERAL BUREAU OF PRISONS,<br><br>Defendants. | No.<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Melissa Concepcion, by and through his attorneys, Beldock Levine & Hoffman LLP, for his Complaint against Defendants identified herein, alleges as follows upon information and belief:

**PRELIMINARY STATEMENT**

1. The United States Bureau of Prisons ("BOP") must provide a minimum standard of care to all those in its custody. The United States Constitution and 18 U.S.C. § 4042 require the BOP to ensure that all incarcerated people are afforded a basic measure of dignity and safety, including by providing for their medical needs and protecting them from harm.

2. The United States breached its duty of care to Plaintiff Melissa Concepcion during his incarceration at two BOP facilities. Through its agents, the United States harassed and discriminated against Mr. Concepcion on the basis of his gender dysphoria, denied him basic medical care, and subjected him to inhumane and unconstitutional conditions of confinement.

3. Defendants committed these unlawful acts while they knew or should have known about Mr. Concepcion's gender dysphoria, history of trauma and abuse, and unique medical needs and vulnerabilities.

1

4.  Mr. Concepcion complained about these conditions on numerous occasions and sought to be treated with dignity. Rather than address Mr. Concepcion's reports of the mistreatment he endured, Defendants allowed it to continue for the duration of his incarceration.

5.  As a result of the Defendants' negligence and mistreatment of Mr. Concepcion in violation of the Constitution and numerous federal regulations and BOP policies, Mr. Concepcion suffered severe and enduring trauma and other debilitating psychological injuries.

6.  Plaintiff brings this suit pursuant to the Rehabilitation Act, 29 U.S.C. § 794, as well as under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671, *et seq.*, for negligence in connection with the Defendants' failure to provide basic care and supervision while acting within the scope of their employment with the BOP.

**PARTIES**

7.  Plaintiff Melissa Concepcion ("Mr. Concepcion") was at all times relevant herein a person in the care and custody of the federal government. Mr. Concepcion was arrested on August 27, 2020 and was detained in BOP custody—first at the Metropolitan Correctional Center ("MCC") located in Manhattan, and then at the Metropolitan Detention Center ("MDC") located in Brooklyn. Mr. Concepcion was released on April 19, 2022.

8.  Defendant Federal Bureau of Prisons ("Defendant BOP") is an agency of Defendant United States of America ("Defendant United States") and is subject to the Rehabilitation Act.

9.  Defendant United States is liable for the injuries caused by its employees pursuant to the Federal Tort Claims Act. At all times relevant herein, Defendant United States, acting through the BOP and its agents, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at MCC and MDC, and was responsible for the hiring, retention, training, supervision, discipline, and conduct of all BOP

2

personnel. Defendant United States is responsible for enforcing the rules of the BOP and for ensuring that BOP personnel obey the Constitution and laws of the United States. In addition, Defendant United States is responsible for the safekeeping, care, and subsistence of all persons in its custody, including Mr. Concepcion.

10. Defendants United States and BOP's employees harassed, denied medical care, subjected to inhumane and unsanitary conditions of confinement, and otherwise discriminated against Plaintiff on the basis of his gender dysphoria. At all relevant times, Defendants' employees were acting within the scope of their employment and under color of law as agents of the United States.

## CONDITIONS PRECEDENT TO THIS LAWSUIT

11. Plaintiff has complied with 28 U.S.C. § 2675 by presenting claims against the BOP, the appropriate federal agency, before instituting this action against the United States.

12. This action is timely brought pursuant to 28 U.S.C. § 2401(b), as it is begun within six months of BOP's denial of Plaintiff's claims.

## JURISDICTION AND VENUE

13. This action arises under the Rehabilitation Act, 29 U.S.C. §794, and the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq*.

14. This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331 and 28 U.S.C. § 1346(b)(1) as arising under the Constitution, laws, and/or treaties of the United States.

15. Venue is proper under 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of New York.

3

**JURY DEMAND**

16. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues and claims in this action that are so triable.

**STATEMENT OF FACTS**

17. For approximately 600 days, beginning August 27, 2020, Mr. Concepcion was incarcerated in BOP facilities, first the MCC and then the MDC.

18. Mr. Concepcion was released with a sentence of time served on April 19, 2022.

19. After Mr. Concepcion's criminal defense attorneys alerted the court to the unlawful conditions of confinement and unlawful treatment he endured as a transgender person in custody, the United States admitted in Mr. Concepcion's sentencing proceedings, "We recognize that the conditions of confinement over the past two years have been extremely difficult."

20. The federal judge who sentenced Mr. Concepcion sentenced him to time served—approximately seven to nine years less than the Federal Sentencing Guidelines recommendation—and noted that Mr. Concepcion served "nearly 20 months in pretrial detention at the MCC and the MDC, during a time that has been especially harsh" and "more punitive than usual."

21. Mr. Concepcion is a transgender man who suffers from gender dysphoria. From a young age, Mr. Concepcion has expressed his gender identity as a man, including by wearing masculine clothing and using masculine pronouns.

22. Gender dysphoria is a serious medical condition that causes severe harm when left untreated, including severe psychological distress and impairment of life activities. According to the World Professional Association for Transgender Health ("WPATH") Standards of Care, the

4

prevailing standards of care in the medical community for treating transgender individuals, gender dysphoria is defined as "discomfort or distress that is caused by a discrepancy between a person's gender identity and that person's sex assigned at birth (and the associated gender role and/or primary and secondary sex characteristics)."

23. Gender dysphoria can be managed and alleviated through treatment. For many individuals with gender dysphoria including Mr. Concepcion, dressing in accordance with one's gender identity is a medically necessary treatment.

24. Mr. Concepcion is a victim of childhood rape, as well as abuse on the basis of his gender identity.

25. The BOP and its employees knew or should have known that Mr. Concepcion has a history of being abused, including being sexually abused.

26. The BOP and its employees knew or should have known of Mr. Concepcion's medical needs as a transgender person.

## I.      Dangerous and Inhumane Conditions of Confinement

27. Since his detention began in August 2020, Mr. Concepcion repeatedly experienced grossly unsanitary conditions.

28. Mr. Concepcion spent 8 days forced to sleep on a urine-soaked bed while sick with COVID-19, all without medical care, hot food, hot water, or sufficient heat in his cell.

29. This incident was just one of many in which Mr. Concepcion was subjected to inhumane and unconstitutional conditions.

30. At the MCC, for example, a burst sewer pipe flooded Mr. Concepcion's unit with foul water.

31. At the MDC, there were multiple periods in which Mr. Concepcion only had access to drinking water that was foul and dark-colored.

32. In December 2021 and January 2022, Mr. Concepcion had to drink foul, dark water for approximately 3 weeks, and had experienced similarly foul water at least twice before.

33. During his confinement, Mr. Concepcion experienced electrical outages, rats crawling on beds, and broken kitchen equipment that BOP failed to fix.

34. In one incident, MDC staff neglected to repair a broken oven for two months, forcing Mr. Concepcion and others in custody to eat raw or incompletely cooked food for that duration.

35. Toilets failed, forcing people in custody to manually flush waste using buckets.

36. Black mold covered shower stalls, which was especially harmful for Mr. Concepcion, who has asthma.

37. BOP staff knew or should have known that Mr. Concepcion's asthma put him at risk from black mold and other unsanitary conditions, as it was documented in his BOP medical records.

38. Mr. Concepcion made multiple complaints of unsanitary conditions.

39. The BOP and its employees failed to address Mr. Concepcion's complaints or take steps to ensure his safety and wellbeing.

## II.    BOP Employees Discriminated Against and Harassed Mr. Concepcion Because of His Gender Identity and Gender Dysphoria.

40. Defendants knew or should have known that transgender people in their custody have unique medical needs and require specific accommodations as part of their treatment. At all relevant times, MCC and MDC staff were subject to the policies outlined in the BOP's "Transgender Offender Manual," published January 18, 2017, and to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301 *et seq.*, and its regulations. These policies, laws, and regulations make clear transgender people have unique needs, provide guidelines for their

care, and establish mandatory BOP policies for preventing and responding to discrimination, harassment, and abuse on the basis of sex and gender identity.

41. However, rather than address Mr. Concepcion's medical needs and treat him with dignity, BOP and its agents discriminated against Mr. Concepcion on the basis of his gender identity and his gender dysphoria. Mr. Concepcion was treated differently from other people in custody simply because he is a transgender man and because of his medical condition, gender dysphoria.

42. In August 2021, for example, Mr. Concepcion requested gender-affirming undergarments.

43. BOP regulations state that gender-appropriate undergarments must be made available to transgender people in custody.[1]

44. BOP staff ignored Mr. Concepcion's request.

45. Mr. Concepcion made numerous additional requests for gender-affirming undergarments, and MDC staff refused to accommodate him.

46. Mr. Concepcion submitted more written requests to prison staff. BOP staff ignored most requests, offering no response. Other times, Mr. Concepcion's requests for accommodation were flatly rejected.

47. BOP employees violated BOP policy by ignoring Mr. Concepcion's requests.

48. Mr. Concepcion was forced to wear women's underwear that did not match his gender identity and exacerbated his gender dysphoria.

49. This indifference and hostility to Mr. Concepcion's medical needs as a transgender man is unfortunately consistent with BOP staff's explicitly transphobic attitudes and verbal harassment toward Mr. Concepcion.

50. BOP staff regularly harassed Mr. Concepcion with transphobic, hateful remarks.

---

[1] See Fed. Bureau of Prisons, Program Statement No. 5200.04, Transgender Offender Manual 11 (2017), https://www.bop.gov/policy/progstat/5200.04.pdf.

51. For example, BOP staff harassed Mr. Concepcion with comments to the effect that there was "a devil inside of him" and he will rediscover his womanhood once he is released.

52. Identity-based abuse and discrimination by officers, who had total control over him, was uniquely painful and caused extreme emotional distress.

53. These derogatory, hateful remarks about Mr. Concepcion's gender constitute prohibited sexual harassment under BOP regulations and PREA.[2]

54. BOP staff knew of Mr. Concepcion's gender identity.

55. BOP staff knew or should have known of Mr. Concepcion's history of being a victim of sexual abuse but failed to protect him from harassment for his gender identity.

56. Mr. Concepcion was also forced into a grossly unsanitary cell, where he was alone for 8 days while sick with COVID-19, because he is transgender.

57. BOP staff initially placed him in quarantine with cellmate who was a woman in custody.

58. An MDC officer told Mr. Concepcion that because he is transgender, he could not have a cellmate.

59. Because he is transgender, MDC staff moved Mr. Concepcion to another cell alone, where he spent 8 days forced to sleep on a urine-soaked bed while sick with COVID-19. While he languished alone in such unsanitary conditions with a high fever, Mr. Concepcion did not receive medical attention and care, did not receive hot food, had no hot water, and was kept in a cold cell without sufficient heat.

60. When Mr. Concepcion complained about the discrimination he faced at the hands of BOP staff and the filthy conditions he was forced to live in, BOP staff overtly retaliated against him.

---

[2] See 28 C.F.R. § 115.6; Fed. Bureau of Prisons, Program Statement No. 5324.11, Sexually Abusive Behavior Prevention and Intervention Program (2014), https://www.bop.gov/policy/progstat/5324_011.pdf.

61. For example, Mr. Concepcion asked if a female officer could replace the male officer assigned to move him to a quarantine unit. Mr. Concepcion suffered sexual abuse as a child, and as a result, is averse to physical touch, particularly from men. In response, the male officer attempted to mace Mr. Concepcion.

62. When Mr. Concepcion filed an administrative grievance, the same male officer physically discarded the complaint in front of Mr. Concepcion and informed Mr. Concepcion that he could treat him however he wanted.

63. As another example, Mr. Concepcion asked why a guard refused to return a towel he had left out to dry. A unit manager told Mr. Concepcion that because staff believed Mr. Concepcion had complained to his attorneys about the conditions of confinement, officers would not comply with his simple request.

64. BOP staff members' actions constituted further rejections of Mr. Concepcion's gender identity and failure to provide medically necessary treatment for gender dysphoria, as well as direct violations of BOP policy. In addition, these actions discriminated on the basis of sex.

65. This harassment and discrimination on the basis of sex and gender identity exacerbated Mr. Concepcion's gender dysphoria and caused him to suffer extreme emotional distress, humiliation, shame, trauma, and other emotional injury.

III.    **History of Conditions of Confinement and PREA Violations at MCC and MCC**

66. People at MDC were subjected to unlawful conditions of confinement before Mr. Concepcion's time detained there, and MDC officials and BOP officials were aware of the conditions but did not remedy them.

67. In January 2019, a devastating blackout occurred at MDC, lasting a full week. During that time, people at MDC were subjected to brutal conditions—freezing cells with little clothing

9

(one day of the blackout saw a low temperature of 2 degrees Fahrenheit), lockdown in dark cells, cold meals, no legal counsel or family visits, and medical neglect—for the duration of the power outage.

68. The blackout was foreseeable and preventable. BOP had identified it needed to update its electrical system and system for regulating temperatures. Before the 1-week blackout, several hours-long blackouts occurred.

69. MDC Warden, facilities managers, and other officials at MDC were negligent in maintaining mechanical systems at MDC, leading to a state of disrepair and unlawful conditions of confinement.

70. The DOJ OIG investigated MDC's blackout and issued a report[3] concluding that the BOP failed to adequately address preexisting heating and cooling issues at MDC, and Warden Herman Quay's negligent maintenance and failure to respond before and during the blackout was unlawful.

71. Rather than disciplining Warden Herman Quay after this finding of his wrongdoing, BOP promoted him after the blackout to a higher warden position overseeing three federal prisons.

72. The failure to train, supervise, and discipline staff, including managerial and supervisory staff, created a culture of impunity, where BOP staff fail in their legal duties to safeguard people in their custody but are rewarded with a promotion.

73. The BOP then did not remedy the conditions or take correctional action, resulting in Mr. Concepcion being subjected to inhumane and unlawful conditions of confinement.

---

[3] https://oig.justice.gov/reports/2019/e1904.pdf.

74. MCC and MDC's history of neglect and brutal treatment of people in custody is well-documented and well-known to the BOP and MCC and MDC officials. In 2019, a former warden called MDC "one of the most troubled, if not the most troubled facility in the Bureau of Prisons."

75. In April 2021, U.S. District Judge McMahon rebuked MDC and MCC saying that they were "run by morons." Judge McMahon added, "There is no continuity, there is no leadership, there is no ability to get anything done. They lurch from crisis to crisis."

76. The inhumane and cruel conditions Mr. Concepcion experienced at MCC and MDC were the result of a longstanding practice of deliberate indifference to such conditions.

77. Furthermore, BOP staff's gender identity harassment, constituting sexual harassment and a violation of PREA, is a result of a longstanding pattern of the BOP, MCC, and MDC refusing to safeguard people in custody and comply with mandatory PREA policies.

78. For example, in 2017, high-ranking lieutenants at MDC who had a role in PREA training were found to have sexually abused several people in their custody. Three were found guilty of sexual abuse. Similar patterns of sexual abuse have occurred in recent years at MCC.

79. The United States and BOP officials were aware of the risk of harm to transgender people in federal custody, as the BOP's Transgender Offender Manual and PREA policies and regulations indicate. However, the United States and the BOP failed to enact policies and training to provide for safety, deliberately disregarding PREA obligations and failing to prevent serious harm.

80. When committing the wrongful acts described herein, MCC and MDC staff were employed by the BOP, acting within the scope of their employment, and under the direct control and supervision of the BOP and supervisory officials at MCC and MDC.

11

81. These violations occurred in part due to the failure of high ranking and supervisorial officials at MCC and MDC, including the Warden, to protect Plaintiff, properly respond to previous allegations of mistreatment due to gender, including gender identity, the failure to take necessary action to prevent abuse, and the failure to protect incarcerated people from retaliation for reporting mistreatment.

82. The BOP and supervisory BOP staff at the MCC and MDC were negligent in hiring, supervising, training, retaining, and disciplining staff, allowing them to torment Mr. Concepcion for his gender identity and retaliate against him for his complaints, as well as ignore his requests for accommodations for his gender identity.

## FIRST CAUSE OF ACTION
### Violations of the Rehabilitation Act, 29 U.S.C. §701, *et seq.*
### *Against Defendants United States and BOP*

83. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

84. Mr. Concepcion suffers from a disability within the meaning and scope of 42 U.S.C. §12102. Accordingly, Mr. Concepcion is a member of the class of persons protected by the Rehabilitation Act, which makes it unlawful to be excluded from the participation in, or be denied benefits of, or be subjected to discrimination, under any program of activity conducted by any Executive agency by reason of his disability.

85. Defendants knowingly and intentionally failed to provide Mr. Concepcion with the necessary aids or services he requested, subjected him to discrimination, and/or maintained policies and procedures that had a disparate impact on Mr. Concepcion because of his disability and resulting in Mr. Concepcion being denied the same benefits and services available to incarcerated people who do not have gender dysphoria.

86. Defendants acts and omissions violated the Rehabilitation Act, which prohibits discrimination on the basis of physical and mental disabilities and protects persons such as Mr. Concepcion from the types of injuries and damages set forth herein.

87. As a direct result of Defendants' acts and omissions, Mr. Concepcion has suffered and continues to suffer damages including, without limitation, pain and suffering; emotional, psychological, and physical distress; and other pecuniary losses.

**SECOND CAUSE OF ACTION**
**Negligence under the Federal Tort Claims Act**
*Against Defendant United States*

88. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

89. At all relevant times, Defendant United States was responsible for providing care to people in its custody, including people incarcerated at MCC and MDC.

90.  Defendant United States owes a duty of care to people in its custody, including Plaintiff. By statute, the BOP must "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2).

91. At all relevant times, Defendant United States had a duty to protect Plaintiff from foreseeable harm and take adequate steps to ensure his safety.

92. Defendant United States, through its agents at the BOP, knew or should have known that Plaintiff was vulnerable to abuse and mistreatment on the basis of his gender identity.

93. Defendant United States knew of Plaintiff's transgender status, unique personal history of abuse, and vulnerability to continued abuse.

94. Defendant United States also knew of a pattern of sexual abuse and harassment by BOP staff within BOP facilities and failed to take steps to remedy it.

95. Defendant United States breached its duty of care to Plaintiff by subjecting him to extremely harmful harassment, abuse, and discrimination on the basis of his gender identity. BOP staff denied Plaintiff's basic medical needs as a transgender person, isolated him and denied him medical care while he was sick with COVID-19 because he is transgender, and subjected him to a pattern of hateful verbal harassment, all in violation of numerous BOP policies and federal regulations under PREA.

96. Defendant United States also breached its duty of care to Plaintiff by subjecting him to filthy, unsafe, and degrading conditions of conditions of confinement. Plaintiff was forced to sleep on a urine-soaked mattress, drink foul water, eat raw food, was exposed to dangerous mold and raw sewage, and was denied medical care while sick with COVID-19.

97. The failure to mitigate these inhumane and harmful conditions was a direct result of Defendants' negligent acts and omissions.

98. Defendants' actions grossly deviated from the steps a reasonable individual would have taken in their positions, given their knowledge of the unsafe conditions and history of sexual harassment at MCC and MDC, as well as their knowledge of Plaintiff's unique vulnerability and medical needs as a transgender person in custody.

99. At all relevant times, Defendants were acting within the scope of their employment as agents of the United States Government.

100.    The United States is liable for tort claims under the Federal Tort Claims Act because a private employer would otherwise be liable for its negligent acts and omissions toward Plaintiff.

101.    Defendant United States' conduct constitutes the tort of negligence under the laws of the State of New York.

102.    As the direct and proximate result of the discrimination and inhumane conditions of confinement he faced while under the care of Defendant United States, Plaintiff suffered severe harm, including PTSD, severe psychological and emotional injury, physical pain, fear, embarrassment, humiliation, shame, extreme emotional distress, loss of quality of life, violation of physical integrity, lost earning capacity, economic damages for medical and counseling expenses, and other harm.

### THIRD CAUSE OF ACTION
**Negligent Infliction of Emotional Distress under the Federal Tort Claims Act**
*Against Defendant United States*

103.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

104.    At all relevant times, Defendant United States was responsible for providing care to incarcerated people in its custody, including people incarcerated at MCC and MDC.

105.    Defendant United States owes a duty of care to people in its custody, including Plaintiff. By statute, BOP must "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2).

106.    At all relevant times, Defendant United States had a duty to protect Plaintiff from foreseeable harm and take adequate steps to ensure his safety.

107.    Defendant United States, through its agents at the BOP, knew or should have known that Plaintiff was vulnerable to abuse and mistreatment on the basis of his gender identity.

15

108.    Defendant United States knew of Plaintiff's transgender status, unique personal history of abuse, and vulnerability to continued abuse.

109.    Defendant United States also knew of a pattern of sexual abuse and harassment by BOP staff within BOP facilities and failed to take steps to remedy it.

110.    Defendant United States breached its duty of care to Plaintiff by subjecting him to extremely harmful harassment, abuse, and discrimination on the basis of his gender identity. BOP staff denied Plaintiff's basic medical needs as a transgender person, isolated him and denied him medical care while he was sick with COVID-19 because he is transgender, and subjected him to a pattern of hateful verbal harassment.

111.    Defendant United States also breached its duty of care to Plaintiff by subjecting him to filthy, unsafe, and degrading conditions of conditions of confinement. Plaintiff was forced to sleep on a urine-soaked mattress, drink foul water, eat raw food, was exposed to dangerous mold and raw sewage, and was denied medical care while sick with COVID-19.

112.    The failure to mitigate these inhumane and harmful conditions was a direct result of Defendants' negligent acts and omissions.

113.    Defendants' actions grossly deviated from the steps a reasonable individual would have taken in their positions, given their knowledge of the unsafe conditions and history of sexual harassment at MCC and MDC, as well as their knowledge of Plaintiff's unique vulnerability and medical needs as a transgender person in custody.

114.    At all relevant times, Defendants were acting within the scope of their employment as agents of the United States Government.

115.     The United States is liable for tort claims under the Federal Tort Claims Act because a private employer would otherwise be liable for its negligent acts and omissions toward Plaintiff.

116.     These acts and/or omissions constituted extreme and outrageous conduct, and caused or disregarded a substantial probability of causing severe emotional distress to Plaintiff. Plaintiff's mental injury and emotional harm were a direct result of Defendants' breach of their duty of care owed to Plaintiff.

117.     Defendants' conduct constitutes the tort of negligent infliction of emotional distress under the laws of the State of New York.

118.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered extreme emotional distress and other psychological and personal injuries including PTSD, severe psychological and emotional injury, physical pain, fear, embarrassment, humiliation, shame, loss of quality of life, violation of physical integrity, lost earning capacity, economic damages for medical and counseling expenses, and other harm.

### FOURTH CAUSE OF ACTION
**Negligent Hiring, Retention, Training, and Supervision under the Federal Tort Claims Act**
*Against Defendant United States*

119.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

120.     At all relevant times, it was the duty of the United States to hire, retain, train, and supervise its agents, servants, and/or employees to operate, maintain, and manage its facilities including MCC and MDC in a reasonable manner, and to protect the health and safety of the people confined in its facilities.

121.     Defendant United States was negligent in hiring, retaining, training, and supervising correctional personnel, who were deliberately indifferent, careless, reckless, unskillful, grossly negligent, and negligent in rendering custodial care to incarcerated people, including Plaintiff.

122.     Upon information and belief, Defendant United States failed to use reasonable care in the hiring, retention, training, and supervision of its employees at the MCC and MDC.

123.     Upon information and belief, Defendant United States failed to meet its duty of care owed to Plaintiffs in the hiring, retention, training, and supervision of its personnel at MCC and MDC.

124.     Defendant United States' conduct constitutes the tort of negligent hiring, retention, training, and supervision under the laws of the State of New York.

125.     Under the Federal Tort Claims Act, Defendant United States of America is liable for this negligence.

126.     As a direct and proximate result of its negligent hiring, retention, training, and supervision, Defendant United States is liable for causing Plaintiff severe harm, including PTSD, severe psychological and emotional injury, physical pain, fear, embarrassment, humiliation, shame, extreme emotional distress, loss of quality of life, violation of physical integrity, lost earning capacity, economic damages for medical and counseling expenses, and other harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Melissa Concepcion respectfully requests that judgment be entered against Defendants as follows:

a.  An award of compensatory damages for all past and future psychological and personal injuries, including but not limited to severe psychological and emotional injury, physical

pain, fear, embarrassment, humiliation, shame, extreme emotional distress, loss of quality of life, violation of physical integrity, lost earning capacity, economic damages for all reasonable medical and counseling expenses, and other harm, in an amount to be determined at trial;

b. An award of punitive damages in an amount to be determined at trial;

c. An award of attorney's fees and costs to the fullest extent permitted by law; together with

d. Such other and further relief as this Court may deem just and proper.

BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016

By: _____
Regina Powers
David B. Rankin
212-277-5892
rpowers@blhny.com

*Attorneys for Plaintiff*